UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEIFEI GU,<br><br>                    Plaintiff,<br><br>-against-<br><br>THE CITY OF NEW YORK; DISTRICT ATTORNEY ALVIN BRAGG; CYRUS R. VANCE; JAVON HENRY; LISA FRANCHINI,<br><br>                    Defendants. | 24-CV-1522 (LTS)<br><br>ORDER OF DISMISSAL |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action asserting claims under 42 U.S.C. § 1983 and state law. She was the victim of an assault in April 2020, and she brings claims against the Assistant District Attorney and his supervisors arising from the dismissal of the charges against her assailant and the refusal to refile the charges against him.

By order dated February 29, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis*, that is, without prepayment of fees. For the reasons set forth below, the Court dismisses Plaintiff's claims.

**STANDARD OF REVIEW**

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff Feifei Gu alleges the following facts. Plaintiff worked as a cashier at a dumpling restaurant on Ninth Avenue in Manhattan. (ECF 1 at 2, ¶ 5.) Daby Keita worked for a food delivery service. (*Id.* at 6.) On April 13, 2020, at about 7:40 p.m., Keita "punched and kicked" Plaintiff inside the store. (*Id.* at 3, ¶ 1; *Id.* at ¶ 30.) Plaintiff filed a police report, and on June 29, 2020, Marie Bolona of the District Attorney's Victim Aid Services Unit emailed Plaintiff a

"supporting deposition" summarizing the facts supporting the misdemeanor complaint against Keita. (*Id.* at 23.)

On June 29, 2020, Plaintiff was notified that Javon Henry, who at that time was an Assistant District Attorney (ADA), had been assigned to prosecute the criminal case against Keita. (*Id.* at 3, ¶ 2.) Plaintiff sent ADA Henry an e-mail providing unspecified evidence but did not receive any further requests from him for information. (*Id.* at ¶ 3.) Plaintiff sent emails in July, November, and December 2020, asserting that ADA Henry was unresponsive and asking if a different prosecutor could be assigned; the emails were sent to Bolona of the Victim Aid Services Unit, Manhattan District Attorney Cyrus Vance, Jr., and others. (*Id.* at 47-48, 50.) In response to one email, Bolona indicated that she would forward Plaintiff's communication to ADA Henry's supervisor, Lisa Franchini. (*Id.* at 13, 47.) DA Vance was also "notified of Javon Henry's misconduct," but he failed to take any action. (*Id.* at 14.)

On March 5, 2021, Plaintiff looked up the criminal case online and learned that the case against Keita had been dismissed. (*Id.* at 3, ¶ 4.) Plaintiff reached out to ADA Henry and, on April 22, 2021, he told her that, in addition to the case against her assailant, many other cases during this period (including homicide prosecutions and other cases with serious charges) had also been dismissed. (*Id.* at 3, ¶ 5.) Plaintiff asserts that Henry breached "his professional obligations by failing to act with due diligence" in the prosecution against Keita and that he had "failed to comply with timing requirements of the case, causing this case to be dismissed." (*Id.* at 8.) Plaintiff points to an email from ADA Franchini that states that Henry "wasn't able to meet the deadline for the timeline of the case." (*Id.* at 8.)

Plaintiff further states that Henry "made a false representation . . . that Daby Keita could not be re-prosecuted criminally." (*Id.* at 10.) According to Plaintiff, charges against Keita could

have been refiled within the limitations period, but Henry did not do so, and thereafter "the statute of limitation[s] to prosecute Daby Keita passed." (*Id.*) Defendant Franchini also "falsely" told Plaintiff that no further prosecution was possible because Keita had already been charged and the case had been dismissed, allegedly in violation of her duty to provide correct information. (*Id.* at 11.)

When Alvin Bragg took office as the new Manhattan District Attorney, which according to public information was on January 1, 2022, Plaintiff alleges, DA Bragg adopted an official policy that changed prosecution priorities to downgrade certain felony charges and drop some misdemeanor prosecutions. (*Id.* at 4.) Plaintiff characterizes this as a "soft-on-crime policy." (*Id.*) She contends that DA Bragg has final policymaking authority and that this policy regarding prosecution priorities is "a widespread and deep-rooted municipal policy." (*Id.* at 4-5.) Plaintiff alleges both that this policy "caused the dismissal of *People v. Daby Keita*, CR-013099-20 NY," which took place in 2021, and that Henry and Franchini refused to "re-prosecute" Keita "due to this policy." (*Id.* at 5.) Plaintiff fears going outside as she may encounter Keita again, which deprives her of "the opportunity to enjoy a full and productive life." (*Id.* at 6.)

Plaintiff sues Henry and Franchini, as well as current and former Manhattan District Attorneys Bragg and Vance, and Victim Aid Unit employee Bolona. Plaintiff asserts claims, under 42 U.S.C. § 1983, for violations of her rights to Equal Protection and Due Process, and state law claims for negligence, negligent misrepresentation, and violations of New York's Crime Victims Bill of Rights and Human Rights laws. Plaintiff seeks $48 million in damages and requests that Defendants be suspended from the practice of law.

## DISCUSSION

A.  **Due Process**

Plaintiff invokes the Due Process Clause of the Fourteenth Amendment. Where a plaintiff sues "to enforce procedural due process rights, a court must determine (1) whether a [liberty or] property interest is implicated, and if it is, (2) what process is due before the plaintiff may be deprived of that interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (citation omitted). To have a property interest in a benefit, a person clearly must have "more than an abstract need or desire" or "unilateral expectation," and must instead "have a legitimate claim of entitlement to it." *Town of Castle Rock, CO v. Gonzales*, 545 U.S. 748, 756 (2005) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). "A benefit is not a protected entitlement if government officials may grant or deny it in their discretion," *Id.* at 756, and prosecutors possess discretionary authority to bring criminal actions, *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972) (prosecutors are "immune from control or interference by citizen or court" in their discretionary decisions whether to pursue charges). *See also Leeke v. Timmerman*, 454 U.S. 83, 87 (1981) ("[T]here is no constitutional right to the criminal prosecution of a third party.").

Moreover, even where "enforcement of a particular provision of law is mandatory and not discretionary, a plaintiff may not have a protected property interest in that enforcement if she is only an incidental, indirect beneficiary of that enforcement." *Cohen v. Cannavo*, No. 11-CV-5482 (JPO), 2012 WL 3999846, at *9 (S.D.N.Y. Sept. 12, 2012); *Silverstein v. Barnes*, No. 85-Cv-8748 (RWS), 1986 WL 4545, at *3 (S.D.N.Y. Apr. 10, 1986) (holding that complainant had "no right to interfere with the prosecutor's determination to move for a conditional dismissal of the case" because he had "no protected liberty or property interest in the proceedings," and thus could not claim that these proceedings deprived him of procedural due process), *aff'd*, 798 F.2d

467 (2d Cir. 1986); see also *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another.").

As the complainant, Plaintiff does not have a protected interest in Keita's prosecution. She is, at most, an incidental, indirect beneficiary of the prosecution of her assailant. Because Plaintiff does not have a protected interest, she cannot state a claim that the failure to prosecute Keita violated her constitutional due process rights. Plaintiff's Section 1983 claim for a violation of her right to due process must therefore be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.      Equal Protection**

Plaintiff also asserts a claim for a violation of her constitutional right to Equal Protection. The Equal Protection Clause "is essentially a direction that all persons similarly situation should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff has not alleged discrimination because of her membership in a protected class.

The right to equal protection also "extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). Such plaintiffs may proceed under one of two theories: (1) selective enforcement, or (2) "class of one." *Id.* An equal protection claim based on selective enforcement requires a plaintiff to establish that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 827 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra v. Town of Southfield*, 48 F.3d 674, 683 (2d Cir. 1995)). To prevail on such a claim, a plaintiff must show both "'disparate treatment and impermissible motivation.'" *Id.* (quoting *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005)).

A class-of-one claim requires a showing that a plaintiff was "intentionally treated differently from other similarly situated individuals without any rational basis." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). In such cases, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005). "The purpose of requiring similarity is to make sure that no legitimate factor could explain the disparate treatment." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012). To prevail on a class-of-one claim, "a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of the comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of mistake." *Clubside*, 468 F.3d at 159.

Here, Plaintiff has not alleged that she was intentionally treated differently from anyone who was similarly situated. The only allegation comparing Plaintiff's situation to that of others is Plaintiff's statement that she was informed that, during this period in 2020, many cases with even more serious criminal charges had also been dismissed. In alleging that the prosecution of the criminal case against her assailant was mishandled, Plaintiff has not identified any similarly situated comparators or alleged facts showing that she was treated differently from such comparators. She thus fails to state an Equal Protection claim, under either a selective enforcement or a class-of-one theory. Plaintiff's Section 1983 claim for a violation of her right to Equal Protection must therefore be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.     ADA Henry**

Prosecutors are immune from civil suits for damages for acts committed within the scope of their official duties where the challenged activities are "'intimately associated with the judicial

7

phase of the criminal process.'" *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Prosecutorial immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). Prosecutors are also absolutely immune from suit for administrative obligations that are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009). "The rationale for conferring absolute immunity in such circumstances is that '[t]he public trust of the prosecutor's office would suffer if [prosecutors] were constrained in making every decision by the consequences in terms of [their] own potential liability in a suit for damages.'" *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (quoting *Imbler*, 424 U.S. at 423).

Plaintiff asserts claims under Section 1983 against ADA Henry for his handling of the prosecution, including allegedly failing to meet deadlines, resulting in dismissal of the charges against Keita, and failing to refile the charges. "[I]nitiating a prosecution" and "presenting the State's case" are prosecutorial functions for which prosecutors have absolute immunity. *Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011) (citing *Kalina v. Fletcher*, 522 U.S. 118, 125, 127 (1997)); *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009) ("Those acts that are intimately associated with the judicial phase of the criminal process [are] shielded by absolute immunity."). Plaintiff's claims against ADA Henry for allegedly mishandling Keita's prosecution, such as by missing deadlines, or refusing to refile charges, fall squarely within the zone of prosecutorial functions for which he is absolutely immune.

In addition, "if a district attorney, or an assistant district attorney acts as a prosecutor, she is an agent of the State." *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017)

(summary order).[1] Plaintiff asserts claims against ADA Henry for his conduct as a prosecutor, rather than for his administrative actions, and he thus was acting as an agent of the State. The immunity from suit in federal court "recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). Insofar as Plaintiff asserts Section 1983 claims against ADA Henry in his official capacity, the Eleventh Amendment bars suit against him in federal court. *See Id.* (citing *Ying Jing Gan*, 996 F.2d at 536, and *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988)); *Nelkenbaum v. Jordy*, No. 19-CV-7953 (VB), 2020 WL 7630354, at *2 (S.D.N.Y. Dec. 22, 2020) (dismissing claims asserted against an assistant district attorney in her official capacity as barred by the Eleventh Amendment).

The Court therefore dismisses Plaintiff's Section 1983 claims for damages against ADA Henry based on prosecutorial and Eleventh Amendment immunity. 28 U.S.C. § 1915(e)(2)(B)(iii).

**D.     Supervisor Franchini**

A supervisory "defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because [she] held a high position of authority." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016). "Because vicarious liability is inapplicable to . . . § 1983 suits," a plaintiff must allege facts suggesting that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added). Plaintiff alleges that Lisa Franchini was Defendant Henry's

---

[1] By contrast, "if a suit centers 'on the administration of the district attorney's office' — that is, on the 'office policy' that the district attorney sets — then the district attorney is 'considered a municipal policymaker,' and the Eleventh Amendment does not immunize him from suit.'" *Alessandro*, 713 F. App'x at 8 (quoting *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993)).

direct supervisor and that Franchini was notified of Henry's delay in prosecuting the charges against her assailant, the dismissal of the criminal charges, and Henry's refusal to refile the charges. Plaintiff can be understood as alleging that Defendant Franchini also refused to refile the criminal charges that had been dismissed. As explained above, Plaintiff has no cognizable interest in the prosecution of another. *See Leeke*, 454 U.S. at 87 ("[T]here is no constitutional right to the criminal prosecution of a third party."). Because the facts alleged do not plead a violation of Plaintiff's rights under the U.S. Constitution, Plaintiff fails to state a claim under Section 1983 against Defendant Franchini in her individual capacity.

Insofar as Plaintiff sues Franchini in her official capacity, the Court considers whether Plaintiff pleads a claim against the municipality for failure to supervise, assuming at this stage that Franchini could be considered a municipal policymaker. *See Alessandro*, 713 F. App'x at 8 ("[I]f a suit centers 'on the administration of the district attorney's office' . . . then the district attorney is 'considered a municipal policymaker'"). The Second Circuit has set out three requirements that must be met before a municipality's failure to supervise constitutes deliberate indifference to the rights of citizens: first, that a policymaker knows "'to a moral certainty'" that her employees will confront a given situation; second, "'that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation;'" and third, 'that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.'" *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (quoting *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)) (some internal quotation marks omitted). Plaintiff alleges that there was a failure to investigate and supervise low level employees, who then engaged in misconduct, *i.e.*, delaying a prosecution, causing dismissal of the charges, and refusing to refile

charges. Because this alleged misconduct does not implicate Plaintiff's constitutional rights, these allegations fail to state a claim under Section 1983 against Defendant Franchini in her official capacity. *Calhoun v. Vicari*, No. 05-CV-4167 (GEB), 2005 WL 2372870, at *5 (D.N.J. Sept. 26, 2005) ("[W]here there is no constitutional violation, there can be no claim for failure to train or supervise adequately."). Plaintiff thus fails to state a claim on which relief can be granted against Defendant Franchini for failing to supervise ADA Henry. 28 U.S.C. § 1915(e)(2)(B)(ii). Insofar as Plaintiff may be alleging that Franchini also refused to refile charges against Plaintiff's assailant, Franchini is also entitled to absolute prosecutorial immunity for such claims because charging decisions are a prosecutorial function. *Flagler*, 663 F.3d at 547.

### E.  Maria Bolona

It is unclear if Plaintiff asserts a federal Section 1983 claim against Defendant Bolona, other than the Due Process and Equal Protection claims, which are brought against all defendants.[2] Plaintiff's allegations that Bolona did not "work collaboratively" (ECF 1 at 12) or respond appropriately to Plaintiff's emails do not state a claim for a violation of a constitutional right. Plaintiff's Section 1983 claims against Bolona are therefore dismissed for failure to state a claim on which relief can be granted.

### F.  District Attorneys Vance, Bragg, and the City of New York

#### 1.  Failure to investigate

Plaintiff alleges that both DA Cyrus Vance, Jr., and Vance's successor, DA Alvin Bragg, failed to investigate ADA Henry's alleged mishandling of the criminal charges against her assailant. The government, however, has no general duty under the U.S. Constitution to protect

---

[2] Plaintiff brings a state law negligence claim against Bolona, based on allegations that she "had the duty to work collaboratively with assistant district attorneys to assist Plaintiff (victim)" and "breached her duty causing the final failure of the case." (ECF 1 at 12.)

an individual from harm. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."). As a result, "[t]here is . . . no constitutional right to an investigation by government officials." *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008); *see also Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 284 (N.D.N.Y. 2018) (dismissing "constitutional claim against defendants for failing to report [or] investigate his complaints").

The Second Circuit has recognized two exceptions to this general rule. First, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Deshaney,* 489 U.S. at 200. Second, the government may assume some obligation when it affirmatively creates or increases the danger. *See Dwares v. City of N.Y.*, 985 F.2d 94, 98-99 (2d Cir. 1993). "The cases where the state-created danger theory was applied were based on grossly reckless acts committed by the state or state actors leaving a discrete plaintiff vulnerable to a foreseeable injury." *Clarke v. Sweeney*, 312 F. Supp. 2d 277, 291 (S.D.N.Y. Mar. 30, 2004).

Here, neither exception applies to Plaintiff's claim that the DA did not investigate her claim that the ADA mishandled a criminal matter in which she was the complainant. Plaintiff has no legally cognizable interest in Keita's prosecution and cannot assert a claim that there was any constitutional duty to investigate the ADA's alleged mishandling of the prosecution. The Court therefore dismisses this Section 1983 claim as against Vance, Bragg, and the City of New York, for failure to state a claim on which relief can be granted.

## 2. Adoption of Policy

Plaintiff also asserts a claim against DA Bragg and the City of New York for his alleged adoption of a soft-on-crime policy, which she suggests affected the prosecution (or refiling of charges) against Plaintiff's assailant. A district attorney is considered a municipal policymaker for claims about the "office policy" that the district attorney sets, *D'Alessandro*, 713 F. App'x at 8, and the Court assumes for purposes of this order that DA Bragg is a municipal policymaker, rather than an agent of the State, for this claim.

To state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).[3]

Here, Plaintiff cannot state a Section 1983 claim for a violation of her rights based on Bragg's alleged policy. As an initial matter, Plaintiff's allegations reflect that the criminal prosecution against Keita was dismissed in March 2021, nearly a year before Bragg's alleged adoption of this policy on "day one" of his tenure as District Attorney, in January 2022. She thus has not pleaded facts showing a causal connection between the policy and the alleged injury.

Moreover, "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution" *Brady v. Berman*, 837 F.

---

[3] A plaintiff may show the existence of such a policy or custom by identifying any of the following: (i) an express policy or custom; (ii) an authorization of a policymaker of the unconstitutional practice; (iii) a failure of the municipality to train its employees that exhibits a "deliberate indifference" to the rights of its citizens; or (iv) a practice of the municipal employees that is "so permanent and well settled as to imply the constructive acquiescence of senior policymaking officials." *Corley v. Vance*, 365 F. Supp. 3d 407, 438 (S.D.N.Y. 2019), aff'd, 811 F. App'x 62 (2d Cir. 2020) (summary order).

13

App'x 70, 71 (2d Cir. 2021) (quoting *Linda R.S.*, 410 U.S. at 619); *In re Att'y Disciplinary Appeal*, 650 F.3d 202, 203 (2d Cir. 2011) (holding that a "litigant who presented the misconduct charge was treated as a complainant, rather than a participant" and had no standing to participate in the disciplinary proceeding). Even as the complaining witness, Plaintiff lacks standing to challenge the alleged failure to refile charges against Keita based on Bragg's alleged policy. This Section 1983 claim based on the alleged soft-on-crime policy is therefore dismissed without prejudice for lack of standing.

**G.     State Law Claims**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).[4]

---

[4] Nothing in this order prevents Plaintiff from filing the state law claims in state court, or from pursuing a civil action for damages against her assailant.

H.     **Leave to Amend**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but granting leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend her complaint.

## CONCLUSION

Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii), and for lack of standing.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter judgment.

SO ORDERED.

Dated:   July 9, 2024
         New York, New York

                                            /s/ Laura Taylor Swain
                                            LAURA TAYLOR SWAIN
                                            Chief United States District Judge